UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHEAN SATGUNAM, | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:12-cv-220 |
| -v- | ) | |
| | ) | HONORABLE PAUL L. MALONEY |
| MARC BASSON, ET AL., | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER MODIFYING AND ADOPTING THE REPORT AND RECOMMENDATION CONCERNING ATTORNEY FEES AND COSTS

This matter is before the Court on each parties' objections to the Special Master's Report and Recommendation (ECF No. 334) regarding attorney's fees and costs. The parties have followed a winding path while litigating this case for the last five years, ultimately resulting in Plaintiff gaining a due process hearing and, after a two-day jury trial, an award of $100,000 in punitive damages for denial of due process under 42 U.S.C. § 1983. As a result of the punitive damages award, Plaintiff is entitled to reasonable attorney's fees and costs under 42 U.S.C. § 1988. Now, the legal battle continues—shifting to a dispute over Plaintiff's counsel's hourly rate and compensable hours, among other things. A Special Master, H. Rhett Pinsky ("Pinsky"), was appointed pursuant to Federal Rule Civil Procedure ("FRCP") 53(b)(1) to make a recommendation as to attorney's fees and costs. Pinsky has filed his Report and Recommendation (R&R) with the Court. In accordance with FRCP 53(f), the Court thereafter ordered the parties to respond with their objections within 14 days. (ECF

No. 335.) The Court now proceeds to review the R&R and consider appropriate action in light of Pinsky's findings and analysis.

The parties largely accept the R&R but cannot agree as to the proper measure of fees for Plaintiff's counsel, Herron; disputes remain as to both his compensable hourly rate and the total number of hours for which fees can be awarded.

First, Pinsky adjudged Herron's applicable hourly rate to be $350. He came to this figure based upon his personal knowledge that competent employment lawyers in Grand Rapids charge between 300 and 400 dollars an hour. Plaintiff argues that an attorney with healthcare expertise was needed and that a rate of $390 reflects the rate health care attorneys command. Defendant argues that Herron is a general practitioner and that the appropriate barometer for his fee is $250 an hour, reflective of the market for employment lawyers in Kalamazoo and/or Lansing.

Second, Plaintiff objects to the percentage-based reduction Pinsky applied to Herron's hours. Pinsky found that 33.3 percent of Herron's hours prior to the appeal related to Plaintiff's successful legal claim, amounting to 106.3 compensable hours of the 319 hours he sought. Instead, Plaintiff argues that 85 percent of Herron's pre-appeal hours are compensable because he believes he "prevailed" in obtaining equitable relief as well as on the legal claim. He additionally asserts that his actual time spent pursuing the successful legal claim amounted to 202 hours, or 63.3 percent of his pre-appeal work.

Finally, the parties dispute Pinsky's conclusion that Mercedes Dordeski was not entitled to fees. Plaintiff claims that the Court directed him to proceed with an administrative hearing with the Secretary of Health and Human Services; the Defendant responds that the

Court merely informed Plaintiff that his argument over MSU's "eligibility" to file reports with the National Practitioners' Data Bank was subject to the exhaustion requirement and that it did not direct Plaintiff to pursue a hearing.

## I. BACKGROUND

The Court adopts the following summary from the Report and Recommendation for purposes of this motion.[1]

Plaintiff, a surgeon, was summarily suspended from his position at Michigan State University on the Health Team and his privileges as a member of that team were terminated without a due process hearing on March 8, 2012. Plaintiff, on the same day, filed a lawsuit alleging a due process violation under 42 U.S.C. § 1983. He requested equitable relief through a temporary restraining order which was denied. Eventually, the relief requested included withdrawing a report to the National Practitioners' Data Bank—an entity to which physicians who have lost their privileges are reported. Such report can have a deleterious effect on a physician's career. After much litigation, he was unsuccessful in obtaining such injunctive relief, although the Court on February 13, 2013 ordered a due process hearing, the result of which was to uphold the original decision. However, after a 2-day trial, a jury awarded him a $100,000 in punitive damages for denial of due process.

## II. PROCEDURAL HISTORY

The relevant procedural history can be briefly recounted. After over four years of litigation, Plaintiff's received a jury verdict for a $100,000 award of punitive damages on his § 1983 claim for violation of his due process rights. (ECF No. 301.) Plaintiff filed a

---

[1] The Court did make minor formatting edits as reproduced. The facts are not in dispute.

corresponding motion for attorney's fees and costs after judgment entered (ECF No. 303); Defendants filed a response. (ECF No. 306.) The Court then filed a notice of intent to appoint a special master for plaintiff's motion for attorney's fees under FRCP 53. (ECF No. 319.) A corresponding order was entered on March 24, 2017, appointing H. Rhett Pinsky as Special Master. (ECF No. 328.)

Pinsky then issued a thorough and thoughtful R&R on July 17, 2017. (ECF No. 334). Each party filed their objections in a timely manner (ECF No. 337–38) as well as response briefs. (ECF No. 339–40.) The Court now reviews the objections to the R&R de novo. Fed. R. Civ. P. 53(f).

III.   ANALYSIS

Under 42 U.S.C. § 1888, the court may, in its discretion, provide reasonable attorneys' fees to prevailing parties in § 1983 cases. The primary concern in evaluating a request for attorney's fees "is that the fee awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Id.* (internal quotation marks omitted) (alteration in original).

The lodestar method of calculation—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,"—is "[t]he most useful starting point for determining the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 433

(1983); *see, e.g., Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).[2]

The Sixth Circuit has identified a dozen factors to assist trial courts in determining the reasonableness of a fee petition, both with respect to the hourly rates being sought and the time expended working the case:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel*, 404 F.3d at 415 (citing *Reed*, 179 F.3d 471-72, n.3). "[M]any of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

### a. Herron's Hourly Rate

Special Master Pinsky logically began by determining an hourly rate for Plaintiff's Counsel, Herron. The appropriate inquiry is to ask what the reasonable hourly rate within the community would be for similar services by comparable lawyers. *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Plaintiff had originally suggested that an hourly rate of $450 per hour was reasonable, based on the Michigan-wide market for attorneys with expertise in

---

[2] Courts "rely on precedents involving attorney fees without regard to whether they involved Title VII[, for example,] or some other federal statute." *Isabel*, 404 F.3d at 415.

health care. Defendant countered with $250 per hour—the going rate for employment lawyers in Kalamazoo County, according to the State Bar of Michigan's 2014 Economics of Law Practice. Pinsky found that the proper community for consideration was Grand Rapids because the conduct giving rise to the litigation occurred in Western Michigan. He further opined that Plaintiff's case did not require an attorney with healthcare expertise and was instead an employment law case. Additionally, based on his personal knowledge, competent employment lawyers in the Grand Rapids market charged between $300 and $400 per hour. He concluded that "an hourly rate of $350 per hour seems reasonable and appropriate" for Herron. (ECF No. 334 at PageID.2579.)

Now, Plaintiff renews his claim that an attorney with healthcare expertise was needed to litigate the case, but adjusts his proposed rate to reflect the Grand Rapids community—arriving at a figure of $390 per hour. (ECF No. 337 at PageID.2598.) Defendants also object to the rate Pinsky set; they maintain that $250 per hour is appropriate for employment law practitioners in Lansing/Kalamazoo but do not proffer any reasoning why Pinsky erred in finding Grand Rapids to be the relevant legal market. (ECF No. 338 at PageID.2633.)

The Court agrees with Pinsky that $350 per hour is the appropriate hourly rate. First, the correct community for gauging legal services is indeed Grand Rapids. In addition to Pinsky's reasoning on this point, the Court notes that the litigation occurred in federal court within the Western District of Michigan and that the "hub" for the District is Grand Rapids. Accordingly, Plaintiff was seeking a lawyer within the Grand Rapids legal community. Second, while Plaintiff may be a surgeon, he required an employment lawyer to litigate his procedural due process claim, not a healthcare lawyer. Therefore, since Pinsky is an

esteemed employment law attorney practicing within the legal community being considered, he was uniquely well-positioned to determine an appropriate hourly rate for Herron. Therefore, the Court concludes that $350 per hour was reasonable.

Accordingly, the Court overrules both parties' objections as to Herron's hourly rate and adopts the rate set by Pinsky.

### b. *The Percentage Reduction*

The next step in the lodestar method is to determine the number of compensable hours claimed by the Plaintiff. Attorney's fees are generally awarded in proportion to the time reasonably spent on prevailing claims. *Husted*, 831 F.3d at 702. Here, Plaintiff had both equitable and legal claims, but the claims were not equally successful. Pinsky noted that Plaintiff's equitable claim "largely failed because he was unable to obtain reinstatement of his privileges and unable to have the filing with the National Practitioners' Data Bank purged."(ECF No. 334 at PageID.2580.) He continued, recounting that Satgunam "was able to obtain a due process hearing from Michigan State University . . . although this was not the relief that Plaintiff wished." (*Id.*) The Court agrees with Pinsky that Plaintiff enjoyed only minimal success pursuing his equitable claim.

In total, Plaintiff claimed that Herron contributed 634 compensable hours for his work on the case. Pinsky divided the hours into pre- and post-appeal hours, finding that Herron spent 319 hours prior to appeal and 315 hours after appeal. (*Id.* at 2581.)

With respect to the pre-appeal hours, Pinsky found that the "bulk of the hours" were spent on equitable relief, "aimed principally at reinstating Plaintiff's privileges and removing the report on Plaintiff from the National Practitioner's Data Bank"—for which he was not

successful. (*Id.*) Therefore, concluding that Herron's early work could not easily be delineated into legal and equitable claim time, Pinsky determined that an across-the-board reduction would accurately account for the division between the successful and unsuccessful claims. (*Id.* at PageID.2582.) Accordingly, he applied a two-thirds (66.6%) reduction in Herron's pre-appeal hours. (*Id.*) He then calculated Herron's compensable hour total for pre-appeal work to be 106.3 hours. (*Id.*)

The Court finds that Pinsky over-corrected Herron's pre-appeal hours. In his objections, Plaintiff includes several exhibits that aggregate Herron's pre-appeal time for work unrelated to Plaintiff's equitable claims. (ECF No. 339 at PageID.2603.) Based on these exhibits, he says that 63.3 percent of his pre-appeal time was spent on activities other than the preliminary injunction for a total of 202 hours. (*Id.* at 2602.) The Court is persuaded that Herron is entitled to compensation for a larger share of these hours and adjusts Pinsky's reduction to 50 percent rather than 66.6 percent. The Court thus calculates that Herron is entitled to compensation for 159.5 hours during the pre-appeal phase of the litigation (319 x .5 = 159.5).

Next, the Court finds that Pinsky made a computational error when calculating Herron's post-appeal hours. After concluding that Herron spent 315 hours on post-appeal work, he instead calculated the compensable post-appeal hours by beginning at a sum of 319 and reducing it by 10 percent. This appears to be a simple computational error created by inserting the number of pre-appeal hours for the post-appeal total. Accordingly, the Court finds that Herron claimed 315 post-appeal hours. After applying Pinsky's 90 percent rate, Plaintiff is left with 283.5 compensable post-appeal hours (315 x.9 = 283.5).

Therefore, in light of the figures established above, Herron worked 443 compensable hours. His compensable rate is 350 dollars per hour. Therefore, Plaintiff is entitled to $155,050 in reasonable attorney's fees (443 x 350 = 155,050). Accordingly, the Court modifies the R&R to reflect the proper attorney's fees attributed to Herron.

### d. Mercedes Dordeski's Fee

One issue with respect to attorney's fees remains—whether Plaintiff is entitled to attorney's fees for Ms. Dordeski's hours. Pinsky indicated that the entirety of Ms. Dordeski's hours related to an administrative hearing before the Secretary of Health and Human Services regarding Plaintiff's bid to have a report removed from the National Practitioner's Database. (ECF No. 334 at PageID.2580.) Therefore, Pinsky denied the request because the endeavor was not successful, and it was not clear that a statutory basis supported the fee request. Without ruling on the statutory basis, the Court finds that Pinsky properly denied Plaintiff's request for the fee because the action was not successful.

### e. Costs

Pinsky notes litigation costs only briefly—indicating that non-taxable costs of $3,347.42 "seem[ed] reasonable." (ECF No. 334 at PageID.2583.) However, Plaintiff asserts that he is entitled to additional taxable costs of $3,244.09, which do not appear in Pinsky's report. (ECF No. 337 at PageID.2604.) Defendant's response to Plaintiff's objections makes no mention of the Bill of Costs. (ECF No. 339.) The Court finds that this issue must be resolved separately. Accordingly, the Court adopts Pinsky's recommendation for costs in the amount of $3,347.42 without ruling on Plaintiff's objection that he is entitled to additional taxable costs in the amount of $3,244.09.

## V.     CONCLUSION

Accordingly, the Court **MODIFIES** and **ADOPTS** Special Master Pinsky's Report and Recommendation. The Court finds that attorney's fees in the amount of $155,050 and costs of $3,347.42 to be reasonable in light of the analysis contained in the Pinsky's R&R and in this opinion.

## ORDER

For the reasons contained in this opinion, the Court hereby **MODIFIES AND ADOPTS** Special Master Pinsky's Report and Recommendation. (ECF No. 334.)

The Court **AWARDS** Plaintiff $155,050 in fees and $3,347.42 in costs, for a total of $158,397.42.

**IT IS SO ORDERED**.

Date:   August 24, 2017                          ___/s/ Paul L. Maloney___
                                                 Paul L. Maloney
                                                 United States District Judge